IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                Case No. 2:16-cr-169-2

Jeffrey Allen Williams

## OPINION AND ORDER

Defendant was convicted on Count 1, conspiracy to possess with intent to distribute and to distribute heroin. By judgment entered on April 30, 2017, defendant was sentenced to a term of incarceration of 92 months, to be followed by three years of supervised release. According to the Bureau of Prisons ("BOP"), defendant's projected release date is March 5, 2023. See www.bop.gov/inmateloc/ (last visited March 17, 2021).

On April 30, 2020, defendant filed his first pro se motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. See Doc. 76. Defendant argued that his health conditions and the COVID-19 threat warranted his release. The government filed a response in opposition to this motion, arguing that defendant had failed to show that he had exhausted his administrative remedies. On May 7, 2020, defendant's motion was denied without prejudice due to non-exhaustion. Doc. 79.

On December 30, 2020, defendant filed another pro se motion to reduce sentence, repeating his arguments that his health conditions and the risk of COVID-19 supported his request for compassionate release. Doc. 81. To that motion, defendant attached a response from the warden dated April 27, 2020, denying his request for a reduction in sentence. Doc. 81-2, p. 5. Counsel was appointed to represent the defendant. Defense counsel filed a notice on

February 23, 2021, that he did not intent to file a supplement to the defendant's pro se motion. Doc. 83. On March 19, 2021, the government filed a response in opposition to the motion. Doc. 85. The government does not contest that defendant has exhausted his administrative remedies. The court will address defendant's motion on the merits, and will consider the materials submitted with his original motion, Doc. 76, and his more recent motion, Doc. 81.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. 2020). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" §3582(c)(1)(A). What constitutes an "extraordinary and compelling reason is defined in United States Sentencing Guidelines, §1B1.13 and Application Note 1. However, the Sixth Circuit has held that the policy statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for

compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111. Therefore, the court will not base its decision on the policy statements.

II. Reason for Compassionate Release

Defendant argues that compassionate release is warranted due to his medical conditions, which enhance his risk from COVID-19. Defendant is 58 years old. Defendant has submitted medical records indicating that he has heart problems and high blood pressure. According to the Centers for Disease Control ("CDC"), persons with heart disease are at increased risk of severe illness from COVID-19, and persons with hypertension might be at an increased risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 18, 2021).

The medical records show that in August of 2018, defendant had a heart attack and had cardiac surgery to repair an aortic dissection, with repair of the right coronary artery and reconstruction of the aortic root. Doc. 76, pp. 5-9. The discharge summary dated August 29, 2018, stated that defendant tolerated the procedure well, and that in time, he should be able to do regular routine tasks, return to work, and take part in recreational activities. Doc. 76, pp. 7, 9. The BOP has continued to monitor defendant's heart condition. A record dated October 23, 2020, requested a CT scan of the chest, noting that defendant had a cardiology evaluation and CT scan in January of 2020. Doc. 82-2, p. 17. This record stated that defendant is prescribed medication

for high blood pressure, and there is no indication that defendant's high blood pressure is not well controlled with medication. A record dated October 26, 2020, stated that defendant underwent a repair of an ascending aortic dissection with single vessel bypass in 2018, that he continued to have a small chronic dissection that was being managed medically, and that he was scheduled for an ECHO/stress test on December 31, 2020. Doc. 81-2, pp. 16. An individualized reentry plan dated March 12, 2020, stated that defendant was classified as CARE1, chronic care, with no medical restrictions, and that he was approved for regular duty work and food service. Doc. 76, p. 11.

The medical records also indicate that defendant tested positive for COVID-19 on May 22, 2020. Doc. 81-2, p. 1. Defendant was asymptomatic and was moved to isolation. Doc. 81-2, p. 3. There is no medical record indicating that defendant had severe symptoms. Defendant contends that he sustained lung damage from COVID-19. A medical record dated October 3, 2020, stated that defendant was seen for a cough which had persisted for several weeks, but he denied shortness of breath, chest pain, palpitations or chest pressure. Doc. 81-2, p. 12. The record noted that defendant had been COVID positive in May, but that he tested negative on October 3rd, and he was prescribed a nasal spray and steroids. Defendant was seen again on November 18, 2020. This record noted that the pulmonary examination was clear to auscuitation, and that defendant had a regular heart rate and rhythm. The diagnosis was chronic bronchitis, which, according to the nurse practitioner, would be monitored. Doc. 81-2, pp. 13-14. Although this record also noted defendant's history of a positive COVID test in May, the record contains no assessment that

4

defendant's bronchitis was the result of COVID.

With regard to the risk of re-infection, the CDC has stated:

> CDC is aware of recent reports indicating that persons who were previously diagnosed with COVID 19 can be re-infected. These reports can understandably cause concern. The immune response, including duration of immunity to SARS-CoV-2 infections is not yet understood. Based on what we know from other viruses, including common human coronaviruses, some reinfections are expected.

https://www.cdc.gov/coronavirus/20199-ncov/faq html (last visited February 17, 2021). In short, the possibility of defendant becoming re-infected with COVID-19 and experiencing severe symptoms is speculative.

As to the likelihood that defendant will be re-exposed to COVID-19, the court notes that when defendant tested positive, he was confined at FCI Elkton. He is now at Petersburg Medium FCI, which houses 1,492 inmates. See www.bop.gov/inmateloc/ (last visited March 17, 2021). That institution reports that 5 inmates and 12 staff members are currently positive for COVID-19, and that 253 inmates and 8 staff have recovered. The BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure that the BOP is prepared to receive and administer the COVID-19 vaccines to the institutions. See https://www.bop.gov/coronavirus (last visited March 11, 2021). The BOP reports that 327 staff and 58 inmates have received the COVID-19 vaccine at Petersburg FCC. Thus, the BOP appears to have adequately addressed the COVID-19 problem at defendant's institution.

The records submitted indicate that defendant's medical conditions are monitored and stable, and that he has already been

infected with COVID-19, with no evidence of serious or life-threatening symptoms. These records fail to establish an extraordinary and compelling reason for a reduction of defendant's sentence.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offense in this case was serious. According to the presentence investigation report ("PSR"), defendant participated in a conspiracy to possess with the intent to distribute heroin, a dangerous and addictive drug. Defendant assisted a co-conspirator in selling heroin from a house located in Steubenville, Ohio. Defendant only participated in the conspiracy for a period of two months, but defendant received a 2-level reduction in his Guideline score for minor role. Therefore, defendant's role was taken into account in the computation of his Guideline range. The PSR calculated defendant's range at 130-162 months. After a departure, the court applied a range of 92-115 months and imposed a lenient sentence at the bottom of the range.

As to the history and characteristics of the defendant, the PSR reported that defendant was a career offender in Criminal History Category VI. Defendant was assigned 16 criminal history points (only 13 points are required for placement in Criminal History Category VI). Defendant's prior criminal record includes convictions for burglary in 1981, theft and robbery in 1982, and possession with intent to distribute cocaine and theft in 1994, which were too old to be assigned criminal history points. His more recent record includes a conviction for burglary in 1997, a conviction for robbery in 2007 (a detainer has been lodged against defendant for parole violations in this case by the Pennsylvania

6

authorities, see Doc. 76, p. 11), convictions for robbery and possession of cocaine in 2008, and a conviction for criminal trespass and breaking into a structure in 2009. The sentence of 4-10 years imposed in the 2007 robbery case (defendant served over 5 years before being released on parole) was not sufficient to deter defendant from engaging in the criminal activity for which he was convicted in the instant case.

In regard to the history and characteristics of the defendant, the PSR reported that defendant grew up in a household where he was exposed to physical and emotional abuse. His father was a drug dealer and an alcoholic. Defendant had a history of substance abuse which included the use of alcohol, marijuana, cocaine, cocaine base and prescription medications. He has also been diagnosed with bipolar disorder. He obtained his GED in 1978.

The individualized reentry plan dated March 12, 2020, indicates that defendant has completed 5 courses while incarcerated and that he has had no incident reports in the last 6 months. He has completed a drug education course. Doc. 76, p. 11. While commendable, this prison record does not show rehabilitation to a significant degree. Defendant contends that he plans on living with his ex-wife when he is released. However, the record does not include any document corroborating this expectation. This raises concerns about whether defendant would be released into a stable environment where he can be adequately supervised.

Defendant was arrested in this case on July 26, 2016, and has served approximately 56 months, about 60 percent of the 92-month sentence. In light of the seriousness of the offense, the defendant's lengthy criminal history, which includes several convictions for serious felonies, and the leniency already shown

the defendant in this case, a reduced sentence would not be sufficient to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from more crimes by the defendant. Even assuming, <u>arguendo</u>, that defendant's health conditions and COVID-19 concerns are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.

<u>IV. Conclusion</u>

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 81 and 83) are denied.

Date: March 23, 2021              <u>    s/James L. Graham    </u>
                                  James L. Graham
                                  United States District Judge